Good morning. I'm just waiting. It's a tick. I learned in Brooklyn about, you know, go to the bar, you know, wait until anybody's ready, you know, pass the, you know. So I just wanted to make sure everybody's ready. Good morning, everyone. So good morning, everyone. Justin Bonas on behalf of Ronald Herron. I think this, the COA poses a really interesting issue specifically with juvenile sentencing. And I want to point the court to what the purpose of COA is, which is to determine whether reasonable jurors would disagree. And interestingly enough, there was a Fifth Circuit case that said if there's any doubt that reasonable jurors would disagree, then the case should move forward for further briefing. And I think specifically with regard to the juvenile issue in Mr. Herron's case. Can I just clarify my own understanding? Is racketeering the only count that encompasses acts when Mr. Herron was still a minor? You're a little over, I'm sorry. Is there anything other than racketeering that would encompass acts that occurred when Mr. Herron was a minor? Is it only the racketeering count? Well, what I would say, Your Honor, as far as, it isn't just racketeering. It is also the murders as well that the court should have held a hearing with regard to his juvenile status and whether he should have been sentenced to life. There should have been a hearing to address that. His juvenile status wasn't addressed at sentencing in the way the Juvenile Delinquent Act would have it, in the way Miller v. Alabama would have it. Those arguments spill over into even the other later crimes, I would say. Because Mr. Herron was shot at a young age. I mean, this is an individual that had a tremendous amount of trauma throughout his life. Does it matter whether it's life, with or without parole? Excuse me, Your Honor? Is the issue raised if the life sentence permits parole at some point? We did not address that specific issue in there, within our briefing. But it would, I mean, it would be my... Not this sentence. Is it life without parole? Oh, it is life without parole. Okay, that's all I'm saying. Excuse me, I apologize. I apologize. So I would say that this is a substantial constitutional issue that should have been barred by the court and should have been addressed directly. And it does relate back. It relates back to his conviction, his sentencing. And I would just have the court note that I was hired very, very, basically a month before his initial petition was due. That is on the docket as well because we were having issues communicating with him because he is in Florence, Colorado. So it was very difficult to communicate with him. And his record is large. So this also flows over to the Brady claim. We submitted a motion for discovery. This also rolls over into the argument with regard to Mr. McFatter and whether that's newly discovered evidence. These are things that the court should have addressed. Now, I know the court did address McFatter substantively. But with regard to the juvenile sentencing issue, I would say that not only does it deal with just the conspiracy and the racketeering at the time, it also deals with the murder. The Brooks murder happened when he was 16. I believe he was 16 because the conspiracy starts when he's 15. So the Brooks murder happens in 1998. He would have been 16 years old. So you have that sentencing issue as far as him being a juvenile. That should have been addressed. And then I believe you have spillover. Well, I'm actually wondering if you're making it harder by suggesting that a lot of things relate back. I'm trying to see what the limit is between what it is that you're asking and what is just merely relitigating issues that a court considered and rejected. But what we are asking, Your Honor, is that specifically the constitutional issues are addressed on their merits. Specifically, the juvenile sentencing issue is addressed on its merits. And it is a substantial issue. And I believe based upon that, I believe that reasonable jurors would disagree as to whether that issue should have been. There should have been no procedural bar and that the court should have addressed that. And that is our position. So maybe can you tell me he is serving multiple life sentences? Is that correct? Yes, he has 12 life sentences. So which of these claims would actually affect his sentence? It is my position that all of them would based upon spillover. They could have charged him differently. Can you explain the spillover argument you're making? I'm not quite clear on that. Please explain the spillover argument that you're making. Absolutely. So it's sentencing. The sentences were imposed for crimes that were committed later. Understood, Your Honor. Yes, so it's sentencing. Sentencing would have been all-encompassing. We're talking about somebody that experienced trauma at a very young age. So you have some of the crimes that are juvenile, right? And I think it's like the conspiracy into the Brooks murder. And then I think you have two other murders that happened. Suppose you're right on the earlier ones when he was a juvenile. But if they had never been charged, then that issue wouldn't even have this issue, right? That is correct, yes. And you just have the later ones. Yes, exactly. And what would your argument be under those circumstances? And why would that same problem for you arise here? Well, we're here only because the government caused that problem. They charged Mr. Heron altogether. So we're here with the situation. You wouldn't have this spillover argument under those circumstances, would you? I agree with you. I agree with you. But we're here because of the government. They have to live with the fact that they chose everything. They charged him with all of these things. So if the Court doesn't have any other questions, I see you. Thank you. Thank you.   Thank you. Good morning, and may it please the Court. My name is Victor Zapana. I'm the Assistant United States Attorney in the Eastern District of New York. And I represent the United States on the COA motion. The COA motion should be denied in its entirety. Judge Gariffist issued a well-reasoned, single-spaced, 28-page opinion after presiding over a six-week trial where a jury found that Mr. Harran committed three execution-style murders as an adult based on drug activity that lasted until he was 28, based on conduct that he admitted himself occurred until he was at least 19. The murders themselves, which are, I think, the government submits, the principal basis underlying the mandatory life sentences here, if Your Honors would recall, there are three Vicar murders here with man and life. And Judge Gariffist imposed consecutive mandatory life sentences as to the Vicar murders occurred while Mr. Harran was an adult. The Brooks murder occurred in 2001, not in 1998, and when he was 19. The Zapata murder occurred when he was 27. The Russo murder occurred when he was 26. The racketeering was, would you at least agree, that some of the racketeering activity happened when he was a minor? Yes, Your Honor. There are three life sentences of the 12 that involve counts that, of which there was charged minor conduct. However, we wouldn't characterize it wholly as minor conduct. These are longstanding conspiracies. I want to emphasize that the substantive drug charge charged Mr. Harran with committing crack distribution conspiracy from age 16 to 28. That is the sole conduct for which there is any sort of debate as to whether he had committed minor conduct. But the evidence at trial completely demolishes the argument that he stopped at age 18. He, in fact, continued, even based on his own testimony, until he was at least 19. But there were eight cooperators who testified at this trial. There were seven lay witnesses who testified at this trial, all implicating him in conduct over the course of 12 years. One lay witness, in fact, talked about this brutal story where her own apartment was converted into a stash house where she saw a gun there, where she saw crack being cooked there. So the conduct here did not stop or should not reasonably be considered as minor conduct. It is extensive, longstanding conduct well into his status as an adult. But, Your Honors, again, I return to the fact that the life sentences here were imposed in three consecutive groups of life sentences. Each of those groups is based primarily on vicar murders Mr. Harran committed as an adult. Your Honor, we don't believe that there is any reasonable debate as to any of the issues presented in the COA motion, because, frankly, on the substance there is nothing there, but also on the procedural issues of which Mr. Harran has not made any argument in the COA motion. And, Your Honors, if there are no further questions. So I want to – I want some help in understanding how we evaluate under the government's theory whether or not something is the same ground of what was raised on direct appeal. On direct appeal, Your Honor. So – and when you're – you're talking about the crime of violence claim, Your Honor. Right. We submit, Your Honor, that when there is an argument raised, and it was fairly rejected, that is under the current law. Right. No, I mean, I get you're making the argument that he's trying for a second bite at the  I'm asking for you just to help me do the line drawing. Like, when is something the same ground as something that was rejected? When does it become a second bite at the apple as opposed to a valid question being raised for the first time on a collateral attack? Your Honor, we certainly submit at minimum when it's the exact same argument. It may be a different analysis now – now after Davis, by the Second Circuit, if it were raised again. But it's the exact same argument, which is to say the argument was that there was a vagueness challenge to the crime of violence asserted as a second-degree murder under the New York penal law. That exact claim was presented on direct appeal. And the exact claim was again presented in the amended petition filed late. But even if the reasoning is different or the analysis is different or the factual predicate is different, you would still say that because it was the same big-picture argument that it was the same ground? Your Honor, we submit that the factual predicate is the same based on what happened – No, I know. I'm just trying to test what you just said, which sounded like a very expansive view on the part of the government. Are you taking the position that any argument that was – if somebody says I'm making a due process challenge, then that becomes the same ground as beforehand? No, Your Honor. But I want to focus specifically on this particular claim. Let's imagine a world where there's a complete re-envisioning of the vagueness doctrine three years from now, but it's the Supreme Court or something like that. There are ways by which a defendant can present a new 2255 petition based on a new standard of substantive law made retroactive under Teague. It would become timely then. There would be cause because it's a new argument fairly presented by the Supreme Court. There may or may not be prejudice. That might be litigated later. But, Your Honors, we think that that paradigm is not the type of case that we have here. There are ways for which a very new argument, totally changing argument, can be presented later. Okay. Thank you so much. Thank you, Your Honors.